# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Crim. No. 09-285 (JRT/JJK) |
| Plaintiff, | |
| v. | |
| 1.  Nuarl Stephon Earl, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

Kimberly A. Svendsen, Esq., Assistant United States Attorney, counsel for Plaintiff.

Lyonel Norris, Esq., Assistant Federal Defender, counsel for Defendant.

JEFFREY J. KEYES, United States Magistrate Judge

This matter is before the Court on Defendant Nuarl Stephon Earl's Pretrial Motion to Suppress Evidence (Doc. No. 37), Pretrial Motion to Suppress Eyewitness Identification (Doc. No. 38), and Pretrial Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 39). Specifically, Defendant seeks to suppress from evidence at trial, any physical evidence obtained as a result of a search and seizure that took place on December 22, 2008, on the grounds that the relevant search warrant was issued without a sufficient showing of probable cause. This Court held a hearing on the

motions on January 7, 2010,[1] and received testimony from the following two witnesses: City of Brooklyn Park Police Officer Peter Brost and Hennepin County Sherriff's Detective Matthew Lunde.  This Court also received three exhibits from the Government, including the search warrants and supporting affidavits at issue. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. Loc. R.  72.1.

For the reasons stated below, this Court recommends that Defendant's motions be denied.

## BACKGROUND

In this case, Defendant is charged with possession with intent to distribute cocaine base, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(B), and two counts of being a felon in possession of a firearm, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2) (Doc. No. 1). Defendant has confined his post-hearing memorandum to the issue of whether the December 19, 2008 search warrant affidavit ("the affidavit") related to the December 22, 2008 search contained probable cause.

---

[1]     On January 8, 2010, this Court issued an Order, taking Defendant's Pretrial Motion to Suppress Evidence (Doc. No. 37), Pretrial Motion to Suppress Eyewitness Identification (Doc. No. 38), and Pretrial Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 39), under advisement for submission to the District Court on Report and Recommendation. (Doc. No. 46).  Thereafter, this Court extended the post-hearing briefing schedule for these motions, and took them under advisement on February 23, 2010.

## I. Investigation of Defendant's Suspected Possession of Narcotics and Firearms by the Hennepin County Violent Offender Task Force

At the January 7, 2010 hearing, City of Brooklyn Park Police Department Police Officer Peter Brost provided the following testimony regarding his investigation in this case and the circumstances surrounding the search of Defendant's residence. Prior to December 19, 2008, Officer Brost had received information regarding Defendant's alleged involvement with the sale of narcotics. He received this information from a confidential informant ("CI"),[2] who identified Defendant, with a nickname of "Poo," as a person selling large amounts of cocaine from Defendant's alleged residence.[3] The CI described the Defendant as a light-skinned black male, 5'10'' tall, 230 pounds, and approximately 38 years old. (Hr'g Ex. No. 1.)

The affidavit does not indicate whether the CI provided specific information as to the knowledge of the sale of cocaine occurring out of Defendant's residence. Instead, the CI provided Officer Brost with a description of a home's exterior identifiers, which the CI identified as the Defendant's residence. Specifically, the CI stated that Defendant lives in a pink house located at a specified location in Minneapolis, MN, with a white mini van parked in the front ("the specified address"). (Hr'g Ex. No. 1.)

---

[2] The affidavit states that the CI was fully identified by name and date of birth to Officer Brost.

[3] The submitted affidavit states that the cocaine sales have been going on for a long period of time but fails to specify the time frame.

Based on the information provided by the CI, Officer Brost decided to conduct surveillance in the area of the specified address. During his surveillance, Officer Brost found a pink house located in the same location described by the CI. In addition, there was a white Dodge Caravan parked directly in front of the specified address.[4]

On December 19, 2008, Officer Brost conducted subsequent surveillance in an alley at the rear of the address, from approximately fifty feet away. Officer Brost admitted that at this time he did not know with certainty that Defendant was a resident of the specified address; however, Officer Brost continued his investigation and received information from the police intelligence unit that Defendant had a listed address of the specified address. Additionally, Officer Brost learned through a Minneapolis Police CAPRS report that Defendant previously listed the specified address as his residence.[5] Based on this information, Officer Brost decided to run a criminal-history check on Defendant, wherein he found numerous drug-possession and weapon charges.

Within seventy-two hours of applying for the search warrant, Officer Brost identified a city trashcan placed approximately fifty feet in the rear of the

---

[4]    The Dodge Caravan, registered to the specified address, originally had a different license plate than was found during Officer Brost's subsequent surveillance.

[5]    The CAPRS report is a computer address query, which contained nineteen lines of address information for Defendant, including a single line dating from 2002 containing the specified address. Officer Brost testified that he was unsure as to when Defendant had last used the specified address as his residence; however, the last date identified on the CAPRS report was from 2002.

specified address.  He was unable to identify from the exterior of the trashcan

which residence it belonged to and he did not witness anyone place the trashcan

in the rear of the home.  However, Officer Brost indicated that the trashcan was

placed directly behind the specified address.  Through training and experience,

Officer Brost is aware that persons distributing narcotics often dispose evidence

of crimes in their trash; therefore, he searched the trashcan.[6]  During his onsite

search of the trashcan, he found: (1) several plastic baggies with suspected

cocaine residue; (2) tear offs[7]; (3) suspected marijuana; and (4) a mailing for the

specified address.  Officer Brost did not recall to whom the discarded mail was

directed to and he did not recall whether the mail was addressed to Defendant.

The suspected cocaine and marijuana was field-tested and both tested positive

for the respective controlled substance.  Officer Brost discarded the remaining

material, and made no record of what had been recovered in total.

Based on the above, Officer Brost submitted an Application for Search

Warrant and Supporting Affidavit to search the specified address.

## II.    December Search Warrant

On December 19, 2008, Hennepin County District Court Judge Patricia L.

Belois issued a warrant to search the specified address in Minneapolis, MN.

---

[6]    Officer Brost testified that he did not receive assistance from the city
garbage collector in retrieving the trashcan.

[7]    A "tear-off" is part of a plastic bag, torn off at the corner, which can be tied
in a knot to contain narcotics.

(Hr'g Ex. No. 1.) Judge Belois issued the warrant on the basis of probable cause contained in the Application for Search Warrant and Supporting Affidavit of Officer Brost, including the aforementioned information received from the CI and specified information from Officer Brost's investigation. (*Id.*)

The search warrant identified the objects of the warrant as:

Controlled substances to include, but not limited to, Cocaine. Packaging equipment such as baggies, tin foil, knives, spoons, razors and scales. Documents, notes, papers, ledgers, pagers, cell phones and their displays, computers including hard drives, peripherals and removable storage media, and videotapes to show activities of controlled substance distribution and to indicate names, addresses and phone numbers of possible sources and/or customers of controlled substances. Monies to show profit of the sale of controlled substances. Documents, receipts, letters, bills and identification to show constructive possession of the items. Firearms.

(*Id.*)

On December 22, 2008, Officer Brost searched the specified address pursuant to the warrant. (*Id.*) During the course of the search of the specified address, several items referred to in the warrant were recovered, including five digital scales covered in residue. (*Id.*) Other items retrieved in the search included: (1) a plastic container with miscellaneous plastic baggies and a quantity of marijuana; (2) $3,600 in a Brinks safe; (3) one plastic Taurus case containing one black .40 caliber millennium Taurus handgun model PT140 (with a loaded magazine, one empty magazine, and one black uncle mikes holster); (4) a blue plastic container with a blue canvass bag containing (one AK47 assault rifle with a loaded magazine with live ammunition, miscellaneous clothing and one white

bullet proof vest); (5) suspected cocaine; and (6) one mailing addressed to Defendant for the specified address. (*Id.*)

Based on the above, Defendant was subsequently indicted for possession with intent to distribute cocaine base, and two counts of being a felon in possession of a firearm.

## DISCUSSION

### I.     Motion to Suppress Eyewitness Identification

On December 9, 2009, Defendant filed a Motion to Suppress Eyewitness Identification (Doc. No. 38), seeking to suppress information provided by a confidential reliable informant ("CRI").  However, Defendant has presented no argument regarding the validity of the CRI's identification.  Nor has Defendant made any request in his post-hearing briefing that the eyewitness identification should be suppressed.  Additionally, the record contains no information on which this Court could determine that the eyewitness identification was unlawful. Therefore, this Court recommends that Defendant's motion be denied.

### II.    Motions to Suppress Evidence

Defendant also filed a Motion to Suppress Evidence (Doc. No. 37), and a Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 39). [8]   In Defendant's post-hearing memorandum, he raises challenges to

---

[8]     In Defendant's post-hearing memorandum, no distinction was made between the Motion to Suppress (Doc. No. 37), and the Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 39).  For purposes of this Report and Recommendation, this Court assumes that

several aspects of the investigation in this case that was identified as the

probable cause used to obtain the December 2008 search warrant.  He argues

that all evidence seized in this case must be excluded from trial because it was

tainted by the unlawful nature of the search warrant.  (Doc. No. 54, Def.'s Mem.

in Supp. of Pretrial Mots. ("Def.'s Mem.") 1.).

### A.      Probable Cause for the December 2008 Search Warrant

Defendant challenges the December 2008 search warrant on the ground

that the information provided to law enforcement and contained in the supporting

affidavit did not establish probable cause.  Based on this challenge, Defendant

moves to suppress the physical evidence seized from his residence on

December 22, 2008.  Specifically, Defendant asserts that the CI tip provided to

law enforcement was anonymous, without independent corroborative evidence,

and not sufficient alone to support a finding of probable cause.  He also contends

that the information derived from the CAPRS report was remote in time and could

not be relied on to support a finding of probable cause.  In addition, Defendant

argues that the Government failed to establish that the property seized from the

trash pull had been abandoned.  Finally, he asserts in a conclusory fashion, that

"[t]he cases in the Eighth Circuit holding that the discovery of drugs or drug

paraphernalia during the course of a trash pull may alone be sufficient to support

---

Defendant has combined the two motions for the purposes of efficiency.  Thus,
this Court will analyze both motions together.

probable cause to search a house were wrongly decided and should not be applied in this case." (Def.'s Mem. 8.)

Searches conducted pursuant to a warrant are reviewed to determine whether the information in the warrant application and supporting affidavit provided probable cause for the search. *Illinois v. Gates*, 462 U.S. 213, 236 (1983). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000) (citing *Gates*, 462 U.S. at 236). When determining whether probable cause exists, a court does not independently evaluate each piece of information, but, rather, considers all of the facts for their cumulative meaning. *United States v. Allen*, 297 F.3d 790, 794 (8th Cir. 2002). The task of a court issuing a search warrant is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . ., there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238; *see also United States v. Salter*, 358 F.3d 1080, 1084 (8th Cir. 2004).

In reviewing the decision of the issuing court, this Court must ensure that the court "'had a substantial basis for . . . conclud[ing] that probable cause exists.'" *United States v. Oropesa*, 316 F.3d 762, 766 (8th Cir. 2003) (quoting *Gates*, 462 U.S. at 238-39). Since reasonable minds may differ on whether a particular search warrant affidavit establishes probable cause, the issuing court's

determination is accorded great deference.  *United States v. Wajda*, 810 F.2d

754, 760 (8th Cir. 1987) (citing *United States v. Leon*, 468 U.S. 897, 914 (1984)).

Upon reviewing the December 2008 Application and Affidavit for Search Warrant

in its entirety, this Court finds that probable cause for the search warrant was

established considering the totality of the circumstances.

### 1.  Confidential Informant

Defendant first argues that Officer Brost received an anonymous tip and

that he "failed to substantiate the information provided by the informant."  (Def.'s

Mem. 4.)  This Court disagrees.  "Information may be sufficiently reliable to

support a probable cause finding if the person providing the information has a

track record of supplying reliable information, or if it is corroborated by

independent evidence."  *United States v. Morales*, 283 F.3d 952, 953 (8th Cir.

2001) (quoting *United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993)).

Here, although the CI had not previously provided Officer Brost with

information, the CI did provide Officer Brost with his full name and date of birth;

therefore, the tip was not made anonymously.  Additionally, the CI provided law

enforcement with a detailed physical description of Defendant and Defendant's

residence.  The CI told law enforcement that Defendant lived at the specified

address and was selling large amounts of cocaine.  Officer Brost corroborated

some of the CI's information during his initial investigation by locating the

specified address, matching the same description, using the information provided

by the CI.  Officer Brost was also able to locate the white vehicle, identified by

the CI, parked in front.  Further, through Officer Brost's continued investigation

he found records, with the CAPRS report, that showed that Defendant had

previously listed the specified address as his residence.  And, based on the

above information, Officer Brost obtained trash from the trashcan associated with

the specified address, which further corroborated the information provided by the

CI.  Therefore, Officer Brost did corroborate the information given by the CI.

### 2.  CAPRS report

Defendant next argues that the CAPRS report was too remote to be relied

on as probable cause for issuing the search warrant.  "Probable cause must exist

at the time of the issuance of the warrant, not merely at some earlier time."

*United States v. LaMorle*, 100 F.3d 547, 554 (8th Cir. 1996).  This Court agrees

that the information from the CAPRS report, when presented without a sufficient

showing of independent evidence, would not be sufficient alone to support a

finding of probable cause because Defendant was last associated with the

specified address more than six years prior to the application for the search

warrant.  However, as noted above, the task of a court issuing a search warrant

is "to make a practical, common-sense decision . . . given all the circumstances

set forth in the affidavit" of whether "there is a fair probability that contraband or

evidence of a crime will be found in a particular place."  *Gates*, 462 U.S. at 238.

In this case, the 2002 CAPRS report supplemented Officer Brost's

independent investigation and the information provided by the CI.  At the time the

CAPRS report was pulled, Officer Brost had already conducted surveillance of

11

the specified address and found the information given from the CI to be accurate.

The CAPRS report simply supported the conclusion that there was a probability

that Defendant was still associated with the specified address because he had

listed it as his residence in the past.  The issuing court thus had sufficient

evidence that supplemented the CAPRS report, including the CI information, and

the illegal substances found in the trash pull (discussed further below), that would

support a showing of probable cause.

### 3.  Trash Pull

Defendant's main contention is that the warrantless search and seizure of

the trash violated Defendant's Fourth Amendment right.  Specifically, Defendant

argues that the trash did not qualify as abandoned property; and thus, cannot

qualify as probable cause sufficient for issuing a search warrant, because the

Government failed to establish that the garbage was outside the confines of the

residence's curtilage.  He further argues that the well-established Eighth Circuit

cases holding that the discovery of drugs or drug paraphernalia during the course

of a trash pull may alone be sufficient to establish probable cause were wrongly

decided.  This Court disagrees with both contentions.

Warrantless searches and seizures of abandoned property do not violate

the Fourth Amendment.  *United States v. Segars*, 31 F.3d 655, 658 (8th Cir.

1994).  Even where the trash was within the curtilage of the residence, the proper

test into whether trash qualifies as abandoned property is "whether the garbage

was readily accessible to the public so as to render any expectation of privacy

12

objectively unreasonable." *United States v. Comeaux*, 955 F.2d 586, 589 (8th

Cir. 1992) (quoting *United States v. Hedrick*, 922 F.2d 396, 400 (7th Cir. 1991)).

An individual must do more than "place trash for collection in a trash can, that the

public has access to, to create an objectively reasonable expectation of privacy."

*United States v. Trice*, 864 F.2d 1421, 1424 (8th Cir. 1988).

Officer Brost testified that the trashcan associated with the specified

address was at least fifty feet away from the residence and appeared ready to be

picked up by the garbage hauler.  Defendant has presented no evidence that the

trash was not readily accessible to the public, while Officer Brost's testimony

indicates that it was.  This Court therefore concludes that Defendant objectively

abandoned the trash by placing it significantly far away from the specified

residence in a place where it would be reasonable for a for the garbage hauler to

take.  Thus, information from the trash pull can and does qualify as probable

cause sufficient for issuing the search warrant.

Defendant's argument that this Court should reject the long established

Eighth Circuit precedent—that the discovery of drugs and drug paraphernalia

during the course of a trash pull is sufficient stand-alone evidence to support

probable cause to search a home—is without merit.  The Eighth Circuit has

repeatedly held that discovery drug paraphernalia in or around a suspect's house

is significant on the issue of probable cause.  *United States v. Hernandez Leon*,

379 F.3d 1024, 1028 (8th Cir. 2004); *United States v. Briscoe*, 317 F.3d 906,

908-09 (8th Cir. 2003); *see also United States v. Gonzalez-Rodriguez*, 239 F.3d

13

948, 951 (8th Cir. 2001) (holding the discovery of drug paraphernalia in the

defendant's trash, which corroborated an informant's tip about drug dealing,

establish probable cause to search the house). Defendant has presented no

argument providing reasons to reject this precedent. This Court rejects

Defendant's conclusory statement, and concludes that the trash pull provided the

"sufficient stand-alone evidence to establish probable cause" necessary to obtain

a search warrant for the specified address. *United States v. Briscoe*, 317 F.3d

906, 908 (8th Cir. 2003).[9]

The search warrant was based on sufficient probable cause as stated in

the affidavit.[10] The affidavit contained independent and corroborative evidence

sufficient to support a common-sense finding of probable cause and that there

---

[9] During the trashcan search, Officer Brost found baggies containing cocaine residue, tear-offs, marijuana, and a mailing addressed to the specified address.

[10] Even if probable cause did not exist, there was a facially valid warrant and the good-faith exception to the exclusionary rule, established in *Leon*, 468 U.S. 897 (1984), would have to be considered. "Under the good-faith exception, evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable." *United States v. Perry*, 531 F.3d 662, 665 (8th Cir. 2008). "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (alteration in original) (quotations omitted). "When assessing the objective [reasonableness] of police officers executing a warrant, [the Court] must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge." *Id.* at 431 (alteration in original) (quotations omitted). Here, this Court concludes that the good-faith exception would apply. There is no evidence to suggest that the officers' reliance on the warrant was not in good faith, nor is there evidence that the officers' reliance was not reasonable.

was a fair probability that officers would find instrumentalities, fruits, and evidence of violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and 18 U.S.C. §§ 922(g)(1) and 924(a)(2) in Defendant's home.  The search warrant in this matter was lawfully issued, and there is no requirement for suppression of evidence seized pursuant to the warrant.  Therefore, this Court recommends that Defendant's Pretrial Motion to Suppress Evidence (Doc. No. 37), and Pretrial Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 39), be denied.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that:

1.     Defendant's Pretrial Motion to Suppress Evidence (Doc. No. 37), be **DENIED**;

2.     Defendant's Pretrial Motion to Suppress Eyewitness Identification (Doc. No. 38), be **DENIED**; and

3.     Defendant's Pretrial Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 39), be **DENIED.**


Date: March 3, 2010

> *s/Jeffrey J. Keyes*
> JEFFREY J. KEYES
> United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **March 12, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure

to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief by **March 22, 2010**.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.